UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES L. DAVIS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RETIREMENT PLAN OF PHIBRO ANIMAL HEALTH CORPORATION AND SUBSIDIARIES AND AFFILIATES, PHIBRO ANIMAL HEALTH CORPORATION, PRINCE AGRI PRODUCTS, INC., THE PRINCE MANUFACTURING COMPANY, and PRINCE MINERAL, INC.,<br><br>Defendants. | Case No. 08-cv-779-JPG |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the Motion to Dismiss filed by Defendants Retirement Plan of Phibro Animal Health Corporation and Subsidiaries and Affiliates, Phibro Animal Health Corporation, Prince Agri Products, Inc., the Prince Manufacturing Company, and Prince Mineral, Inc. (Doc. 15). Plaintiff Charles L. Davis has responded, and Defendants have replied. The Court heard oral arguments on the Motion, and is now prepared to rule.

### BACKGROUND

**I.      Facts as Alleged in Complaint**

The Retirement Plan (the Plan) was originally established by Phillip Brothers effective January 1, 1951. Plaintiff Charles L. Davis (Davis) was hired by Prince Manufacturing on September 14, 1971. Phillip Brothers acquired Prince Manufacturing on November 1, 1974. At that time Davis became a participant in the Plan. The Plan back-credited Davis's benefit-related service to September 14, 1971 for purposes of calculating his benefits.

In 1980, Phillip Brothers created Prince Agri as a wholly owned subsidiary. In 1991, Phillip Brothers was preparing to spin-off two divisions then known as C.P. Chemicals and C.P. Organics into a public company. In anticipation of the spin-off, Defendants purchased an annuity for Davis in the amount of $5,611.56 payable as a ten-year certain and continuous annuity, with monthly pay-outs of $467.63 to begin on October 1, 2013.

On September 1, 2003, Phillip Brothers changed its name to Phibro Animal Health Corporation. In late 2003, Phibro sold Prince Manufacturing to Palladium Equity Partners, who changed the name of the company to Prince Minerals, Inc. Davis remained employed by Phibro/Prince Agri and remained a participant in the Plan after the sale of Prince Manufacturing.

The Plan was renamed the Retirement Plan of Phibro Animal Health Corporation and Subsidiaries and Affiliates effective April 15, 2005. Davis left his employment with Phibro on June 30, 2006. Davis received a copy of his final benefit statement and benefit calculation worksheet on November 8, 2006. He was told to contact benefits coordinator Dianne Kappes with any questions.

According to the terms of the current Plan[1], effective July 1, 1997, Plaintiff's normal retirement pension is the sum of:

    (a). His Accrued Benefit under the Prior Plan, determined as of June 30, 1989, under the terms and conditions of the Prior Plan, plus
    (b). His normal retirement pension earned after July 1, 1989 determined based on his age, his average compensation, and his years of service.

The dispute centers on how the accrued benefit in Part (a) was calculated. Davis believes

---

[1] The Plan was attached to the Complaint and is, therefore, properly before the Court on a motion to dismiss. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

2

that under the terms of the Prior Plan, his accrued benefit as of June 30, 1989, could not have been calculated until he retired or otherwise left employment with Phibro. Because, until then, the Plan could not calculate his "Average Compensation" which is defined as "your compensation averaged over the five consecutive years during which your pay is highest within the ten-year period before your normal retirement date or the date of your earlier termination of employment." Under the terms of the Prior Plan[2], Davis's "normal retirement benefit" was calculated as 3% of the employee's Average Compensation reduced by 66 2/3% of the employee's Social Security Benefits. When Davis did the math, plugging in his "Average Compensation," he came up with a number that is radically different from the number the Plan came up with. He contacted Kappes, a benefits coordinator at Phibro asking how the Plan arrived at its figure. He was told:

> The 6/30/1989 accrued benefit is based upon average compensation as of 6/30/1989. We do not have a copy of this original calculation, which was completed approximately June 30, 1989. The 6/30/1989 accrued benefit was calculated for all participants around that time. We do not have copies of the original calculations. However, please note that those amounts are frozen benefit amounts based on pay prior to 6/30/1989. The 6/30/1989 accrued benefit DOES NOT increase as a result of pay increases after 6/30/1989. The benefit earned for service after 6/30/1989 is added to the 6/30/1989 accrued benefit to come up with the total benefit. The 6/30/1989 accrued benefit is NOT adjusted for any pay increases occurring after 6/30/1989.

The parties dispute whether that query and answer constitute an exhaustion of administrative remedies or a concession that exhaustion would be futile.

Davis asked Kappes via email to send him a copy of the Prior Plan. Defendants did not provide him one. In Count III, Davis asks for Defendants to pay statutory penalties under

---

[2]The Prior Plan was attached to the Complaint and is, therefore, properly before the Court on a motion to dismiss. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

3

ERISA § 104(b)(4) for failing to provide him copies of the Prior Plan. Davis also claims that Defendants did not give plan participants the notice that ERISA requires when they replaced the Prior Plan with the current Plan.

**ANALYSIS**

For purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those facts in favor of the plaintiff. *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (per curiam ) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir.2007). The federal system of notice pleading requires only that the plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Therefore, the complaint need not allege detailed facts. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir.2007).

However, in order to provide fair notice of the grounds for his claim, the plaintiff must allege sufficient facts "to raise a right to relief above the speculative level." *Id*. (quoting *Twombly*, 127 S.Ct. at 1965 (2007)) (internal quotations omitted). The complaint must offer "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 127 S.Ct. at 1965. The plaintiff's pleading obligation is to avoid factual allegations "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir.2007). However, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the

4

factfinder." *Twombly*, 127 S.Ct. at 1969 n. 8.

I.      **Count III - Statutory Damages for Failing to Turn Over the Prior Plan Documents**

   A.      **Entitlement to Copy of Prior Plan**

ERISA Section 104(b)(4) provides, in relevant part:

The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated. 29 U.S.C. § 1024(b)(4).

Plaintiff argues that the Prior Plan is an instrument under which the Plan is established or operated because part of a retiree's benefit is the "Accrued Benefit under the Prior Plan, determined as of June 30, 1989, under the terms and conditions of the Prior Plan." Because the latest Plan refers plan participants to calculations made "under the terms and conditions of the Prior Plan," a plan participant must be able to review the "terms and conditions of the Prior Plan" in order to fully understand his rights under the current Plan. Therefore, the argument goes, the Prior Plan is "an other instrument under which the plan is established or operated."

"The purpose of this disclosure provision is to ensure that the individual participant knows exactly where he stands with respect to the plan." *Mondry v. American Family Mut. Ins. Co.*, 557 F.3d 781, 793 (7th Cir.2009) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989)). "Knowing where one stands with respect to a plan includes having the information necessary to determine one's eligibility for benefits under the plan, to understand one's rights under the plan, to identify the persons to whom management of plan funds has been entrusted, and to ascertain the procedures one must follow in order to obtain benefits." *Id*. Normally, "outdated plan documents do not fall into any of the categories of documents a plan

5

administrator must provide to plan participants under 104(b)(4)," *Shields v. Local 705, Int'l Bhd. of Teamsters Pension Plan*, 188 F.3d 895 (7th Cir. 1999), because normally, such documents are not necessary in order to determine one's rights under the current plan. However, here, Davis was informed that he had a right to his Accrued Benefit under the Prior Plan, determined as of June 30, 1989, under the terms and conditions of the Prior Plan. In order for Davis to calculate the amount to which he is entitled, he must have access to the terms and conditions of the Prior Plan.

### B. Entitlement to Statutory Damages

However, Davis is only entitled to receive a copy of the Prior Plan pursuant to ERISA Section 104(b)(4), upon written request to the Plan Administrator. Here, Davis sent an email[3] on June 30, 2008, to Diane Kappes requesting, among other things, a copy of the Prior Plan and its summary plan descriptions. Davis acknowledges in his email that Kappes is not the Plan Administrator. He writes, "I thought an email would allow you to get a jump start on getting the documents from the Plan Administrator." As the email is the writing upon which Davis relies for his claim for statutory damages under Section 104(b)(4), and as Davis makes clear in the email that he understands he is not tendering it to the Plan Administrator, Davis cannot sustain his claim for damages under Section 104(b)(4). Here, the facts as alleged demonstrate that the plaintiff is entitled to no relief on this claim. Accordingly, the Court will dismiss Count III.

## II. Exhaustion of Administrative Remedies or Futility

---

[3]The email was attached to the Complaint and is, therefore, properly before the Court on a motion to dismiss. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

"The text of 29 U.S.C. § 1132, providing for civil actions to redress violations of ERISA, does not address whether a claimant must exhaust [his] administrative remedies before filing suit in federal court." *Gallegos v. Mount Sinai Med. Ctr.*, 210 F.3d 803, 807 (7th Cir.2000). *See also Call v. Ameritech Mgmt. Pension Plan*, No. Civ. 01-717-GPM, 2004 WL 483199, at *3 (S.D.Ill. Mar. 10, 2004). However, in light of ERISA § 503, 29 U.S.C. § 1133, directing employee benefit plans to provide adequate written notice of the reasons for denials of claims by plan participants and to create procedures for the review of such denials of claims, the Seventh Circuit interprets ERISA as requiring exhaustion of administrative remedies as a prerequisite to bringing suit under the statute. *See Powell v. A.T. & T. Communications, Inc.*, 938 F.2d 823, 826 (7th Cir.1991). "[T]he decision to require exhaustion as a prerequisite to bringing suit is a matter within the discretion of the trial court." *Salus v. GTE Directories Serv. Corp.*, 104 F.3d 131, 138 (7th Cir .1997) (*quoting Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir.1996)).

In general, "implementing the exhaustion requirement enhances the ability of plan fiduciaries to expertly and efficiently manage their plans by preventing premature judicial intervention and because fully considered actions by plan fiduciaries may assist the courts when they must resolve controversies." *Id*. at 826 (citing *Kross v. Western Elec. Co., Inc.*, 701 F.2d 1238, 1244 (7th Cir. 1983)). Exhaustion benefits the district court by clarifying the issues and disputes before it. *Lindemann*, 79 F.3d at 650. Furthermore, exhaustion may result in the non-judicial settlement of the plan participant's claims. *Id.* Therefore, it is not lightly set aside.

However the court may excuse an ERISA plaintiff's failure to exhaust administrative remedies where there is a lack of meaningful access to review procedures, or where pursuing internal plan remedies would be futile. *See Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d

1231, 1236 (7th Cir.1997); *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 402 (7th Cir.1996); *Smith v. Blue Cross & Blue Shield United of Wis.*, 959 F.2d 655, 658-59 (7th Cir.1992).

Defendants ask the Court to dismiss this case because Davis failed to exhaust his administrative remedies. Department of Labor regulations state that the claimant must make his claim for benefits in accordance with a plan's reasonable procedure for filing benefits claims. 29 C.F.R. § 2560.503-1(e). Defendants say that the Plan's procedures required Plaintiff to contact the Plan Administrator with his claim. Kappes was not the Plan Administrator. The Plan Administrator was, at one time, the Phibro Corporation, and is currently the "Retirement Benefits Committee." So, they contend, the Plan Administrator was not given a chance to review Davis's claim, make its determinations, and compile a record for review by the Court.

Defendants also argue that Davis was not clear in his emails to Kappes that he was making a claim for additional benefits or administrative review. Under *Powell*, if a plaintiff does not follow the procedures for filing claims established by the plan, he must first show that the plan procedures are not reasonable. Then, he must show that the correspondence he sent was "reasonably calculated to alert the employer to the nature of the claim and request administrative review." *Powell*, 938 F.2d at 826. Here, Defendants view Davis's emails as a mere attempt to gather information, rather than a request for administrative review.

Davis counters that Kappes undertook to answer his queries and never directed him to contact anyone else. Therefore, she was in effect, acting as Plan Administrator. He also argues that his emails make it clear that he was doing more than merely requesting information. He attached a spreadsheet showing how he had calculated his benefits and asking Kappes how the

8

plan had arrived at its much lower figure. Davis contends this is adequate notice that he was making a claim for increased benefits in accordance with his calculations. Plaintiff also argues that the statement, "We do not have a copy of this original calculation, which was completed approximately June 30, 1989," is a concession by Defendants that pursuing administrative review would be futile. Defendants counter that just because they do not have the original calculations from 1989, does not mean they cannot recreate them today.

The Court will not dismiss this action for failure to exhaust administrative remedies. Davis acted reasonably and diligently in attempting to submit his claim to the Plan Administrator. Although his emails make it clear that he was aware that Kappes was not the Plan Administrator, it was reasonable for him to believe that she would convey his claim to the Plan Administrator. Alternatively, Kappes had every opportunity to direct Davis to the appropriate contact person for the Plan Administrator. It was not unreasonable for Davis to contact his benefits coordinator with his initial claim for benefits when the Plan Administrator was the Phibro corporation and later a committee made up of unknown members. Corporations can only act through individuals, and as Kappes was the individual Davis was told to contact with questions about his retirement benefits, he was justified in thinking that claims for additional benefits should be made to her, as well.

Furthermore, the wording of the emails, questioning the calculation of Davis's benefits from Part (a), and particularly the spreadsheet attachment providing Davis's own calculations, was "reasonably calculated to alert the employer to the nature of the claim and request administrative review." Davis clearly thought his benefits in Part (a) were miscalculated. He asked Defendants to review their calculations against his, and to explain the discrepancy between

9

their numbers and his much larger ones.

However, the Court agrees with Defendants that administrative review of this claim is appropriate. The Court will benefit from having the Plan Administrator fully consider and explain its interpretation of the Plan and the Plan's actions. In that way, the Court will be able to apply the proper standard of review. Additionally, the Court and the parties will benefit in the event that Davis and the Plan can use this administrative review process to arrive at a non-judicial settlement of Davis's claims. Accordingly, the Court will compel Davis to exhaust his administrative remedies. However, the Court will exercise its discretion to stay, rather than dismiss, this action.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in Part and DENIES in part** Defendants's Motion to Dismiss (Doc. 15). The Court **GRANTS** the Motion as to Count III of Plaintiff's Complaint and **DISMISSES** that count with prejudice. The Court **DENIES** the Motion as to the remaining claims. The Court **STAYS this action for a period of 90 days** from the entry of this Order. The Court **ORDERS the parties** to file with the Court a joint status report as to the progress of the administrative proceedings on or before July 31, 2009.

**IT IS SO ORDERED.**
**DATED: May 14, 2009**

                                        s/ J. Phil Gilbert
                                        **J. PHIL GILBERT**
                                        **DISTRICT JUDGE**